**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, 8th Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiffs, and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

LUIS MOLINA, *on behalf of himself,*
*FLSA Collective Plaintiffs, and the Class,*

        Plaintiff,

        v.

METROPOLITAN REALTY GROUP, LLC, and
SCOTT JAFFEE,

        Defendants.

---

Case No.:

**CLASS AND**
**COLLECTIVE**
**ACTION COMPLAINT**

Jury Trial Demanded

---

      Plaintiff LUIS MOLINA ("Plaintiff MOLINA" or "Plaintiff"), on behalf of himself and others similarly situated, by and through his undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendants, METROPOLITAN REALTY GROUP, LLC ("Corporate Defendant"), and SCOTT JAFFEE ("Individual Defendant," and together with Corporate Defendant, "Defendants"), and states as follows:

<u>**INTRODUCTION**</u>

      1.    Plaintiff alleges that, pursuant to Fair Labor Standards Act as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), he and others similarly situated are entitled to recover from Defendants:

(1) unpaid wages, including overtime, due to timeshaving; (2) liquidated damages, and (3) attorneys' fees and costs.

2.     Plaintiff further alleges that, pursuant to the New York Labor Law ("NYLL"), he and others similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to timeshaving; (2) statutory penalties; (3) liquidated damages; and (4) attorneys' fees and costs.

3.     Plaintiff further alleges that, pursuant to New York State Human Rights Law N.Y. Exec. Law § 296 ("NYSHRL"), Plaintiff is entitled to recover from Defendants for age discrimination: (1) back wages; (2) compensatory and punitive damages; and (3) attorneys' fees and costs.

4.     Plaintiff further alleges that, pursuant to New York City Human Rights Law Administrative Code of City of NY § 8-107 ("NYCHRL"), Plaintiff is entitled to recover from Defendants for age discrimination: (1) back wages; (2) compensatory and punitive damages; and (3) attorneys' fees and costs.

## JURISDICTION AND VENUE

5.     This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337 and 1343 and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. §1367.

6.     Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

7.     Plaintiff is not subject to any arbitration agreement that would limit his ability to pursue his wage and hour claims in a judicial forum. The Collective Bargaining Agreement of Plaintiff's Union requires him to engage in mediation before filing a complaint in court and

authorizes Plaintiff's Employer to intervene to stay any court action filed prior to the completion of the mediation process but Plaintiff has completed the mediation requirement on March 14, 2024.

## PARTIES

8.    Plaintiff LUIS MOLINA is a resident of New York County, New York.

9.    Defendants own and operate a realty company that provides services to twenty-four (24) buildings in New York. Defendants provide services to buildings throughout New York, including:

      a)  Villa Hermosas Apartments – 1600 Madison Avenue, New York, NY 10029;

      b)  Harlem Gateway – 229 Central Park N, New York, NY 10026;

      c)  Cromwell Towers – 77 Locust Hill Avenue, Yonkers, NY 10701;

      d)   Kubasek Manor – 406 Walnut Street, Yonkers, NY 10701;

      e)  Fulton South Redevelopment – 1330 Fulton Street, Brooklyn, NY 11216;

      f)  Penn Gardens – 378 Pennsylvania Avenue, Brooklyn, NY 11207;

      g)  Trinity Apartments – 2105 Daly Avenue, Bronx, NY 10460;

      h)  West Farms Estate – 1314 West Farms Road, The Bronx, 10459l;

      i)  Park Lake Apartments – 295 S Franklin Street, Hempstead, NY 11550; and

      j)  Pine Town Houses – 151 E Pine Street, Long Beach, NY 11561.

10.    Corporate Defendant METROPOLITAN REALTY GROUP, LLC is a domestic limited liability company organized under the laws of the State of New York, with its principal place of business, and an address for service of process located at 60 Cuttermill Road, Suite 200, Great Neck, NY 11021.

11.    Individual Defendant SCOTT JAFFEE is the Managing Member, Founder, and Principal of Corporate Defendant. Defendant SCOTT JAFFEE exercises operational control as it

relates to all employees, including Plaintiff, FLSA Collective Plaintiffs, and the Class. Defendant SCOTT JAFFEE exercises—and also delegates to managers and supervisors—the power to: (i) fire and hire, (ii) determine rate and method of pay, (iii) set employee schedules, and (iv) otherwise affect the quality of employment, including those of Plaintiff, FLSA Collective Plaintiffs, and the Class. At all relevant times, employees of the Corporate Defendant could complain to Defendant SCOTT JAFFEE directly regarding any of the terms of their employment, and Defendant SCOTT JAFFEE would have the authority to effect any changes to the quality and terms of employees' employment, including changing their schedules, compensation, terminating or hiring such employees, or designating others to effect any changes. Defendant SCOTT JAFFEE exercised functional control over the business and financial operations of Corporate Defendant. Defendant SCOTT JAFFEE had the power and authority to supervise and control supervisors of Plaintiff, FLSA Collective Plaintiffs, and the Class.

12.    At all relevant times, Corporate Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of FLSA.

13.    At all relevant times, the work performed by Plaintiff, FLSA Collective Plaintiffs, and Class Members was directly essential to the businesses operated by Defendants.

14.    Plaintiff has fulfilled all conditions precedent to the institution of this action and/or such conditions have been waived.

## FLSA COLLECTIVE ACTION ALLEGATIONS

15.    Plaintiff brings claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees, including, but not limited to, handymen, janitors, technicians, resident service coordinators, and porters, employed by

Defendants on or after the date that is six years before the filing of the Complaint in this case (herein, "FLSA Collective Plaintiffs").

16.     At all relevant times, Plaintiff and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay wages, including overtime, due to time shaving. The claims of Plaintiff stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

17.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of FLSA, 29 U.S.C. 216(b). FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 ALLEGATIONS – NEW YORK

18.     Plaintiff brings claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees, including but not limited to handymen, janitors, technicians, resident service coordinators, and porters, among others, employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (the "Class Period").

19.     All said persons, including Plaintiff, are referred to herein as the "Class." The Class Members are readily ascertainable. The number and identites of the Class Members are able to be determined from the records of Defendants. The hours assigned and worked, the position held, and rates of pay for each Class Member can also be determined from Defendants' records. For purposes

of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P. 23.

20.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown because the facts on which the calculation of that number rests are presently within the sole control of Defendants, there is no doubt that there are more than forty members of the Class.

21.    Plaintiff's claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendants of: (i) failing to pay wages, including overtime, due to time shaving; (ii) failing to provide wage notices to Class Members, at the date of hiring and annually thereafter, per requirements of the NYLL; and (iii) failing to provide proper wage statements per requirements of the NYLL.

22.    Defendants' corporate-wide policies and practices affected all Class Members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class Member. Plaintiff and Class Members sustained similar losses, injuries, and damages arising from the same unlawful policies, practices, and procedures.

23.    Plaintiff is able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented plaintiffs in wage and hour cases.

24.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries, and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expense and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

25.     Defendants and other employers throughout the state violate the NYLL. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who

are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

26.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

a)  Whether Defendants employed Plaintiff and the Class within the meaning of the NYLL;

b)  What are and were the policies, practices, programs, procedures, protocols and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiff and the Class Members properly;

c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiff and Class Members for their work;

d)  Whether Defendants properly notified Plaintiff and Class Members of their hourly rates;

e)  Whether Defendants properly compensated Plaintiff and Class Members for all hours worked, including overtime, due to timeshaving;

f)  Whether Defendants provided wage and hour notice to employees, including, among others, the rate of compensation and trade name of employer, pursuant to the requirements of the NYLL; and

g)  Whether Defendants provided proper wage statements to employees as required under the NYLL.

## STATEMENT OF FACTS

*Wage and Hour Claims:*

27.    In or around January 2002, Plaintiff MOLINA was hired by Defendants to work as a handyman for Defendants at various locations, but mainly at Villa Hermosas Apartments, located at 1600 Madison Avenue, New York, NY 10029. Plaintiff's employment was terminated in or around March 8, 2023.

28.    Throughout his employment, Plaintiff was scheduled to work nine (9) hours a day for five (5) days a week for a total of forty-five (45) hours per week. FLSA Collective Plaintiffs and Class Members were scheduled to work similar hours each week.

29.    Throughout Plaintiff's employment, Defendants paid Plaintiff at various hourly rates. In 2016, Plaintiff was paid approximately $25.50 per hour. In 2017, Plaintiff was paid approximately $26.00 per hour. In 2018, Plaintiff was paid approximately $26.50 per hour. In 2019, Plaintiff was paid approximately $27.00 per hour. In 2020, Plaintiff was paid approximately $27.50 per hour. In 2021, Plaintiff was paid approximately $28.00 per hour. In 2022, Plaintiff was paid approximately $28.50 per hour. In 2023, Plaintiff was paid approximately $29.00 per hour. At all times, Plaintiff was paid weekly by check. FLSA Collective Plaintiffs, and Class Members were also paid weekly checks at similar hourly rates.

30.    At all relevant times, Plaintiff was not paid overtime premium for hours worked more than forty hours per week due to time shaving. Defendants knowingly and willfully failed to pay Plaintiff his proper overtime premium rate of time and one half of regular hourly rate for each hour exceeding forty hours per workweek. Similarly, FLSA Collective Plaintiffs and Class Members were not paid proper overtime premiums.

31.     Throughout his employment, Plaintiff was not compensated for all hours worked, including overtime, due to time shaving. Specifically, Defendants time-shaved Plaintiff's hours by (i) failing to compensate Plaintiff for his hours on the clock and (ii) requiring Plaintiff to work off-the-clock without compensation. Similarly, FLSA Collective Plaintiffs and Class Members were subjected to Defendants' timeshaving practices.

32.     For example, during the pay period of November 30, 2020, to December 6, 2020, Plaintiff was clocked in for a total of 45.43 hours but was only paid for 40 hours, resulting in 5.43 hours being timeshaved. Similarly, for the pay period of September 20, 2021, to September 26, 2021, Plaintiff was clocked in for 47.10 hours but was only paid for 40 hours. Plaintiff was therefore time-shaved for 7.10 hours. FLSA Collective Plaintiffs and Class Members also suffered from Defendants' failure to compensate for all recorded hours.

33.     Additionally, approximately once a week, Defendants required Plaintiff to work an additional half-hour post-shift and off-the-clock for no compensation. For example, Defendants required Plaintiff to start a repair job near the end of his shift, and Plaintiff could not leave until the task was completed. However, Defendants required Plaintiff to clock out prior to beginning these end-of-day repairs to avoid compensating Plaintiff for those post-shift overtime hours. Similarly, Defendants required FLSA Collective Plaintiffs, and Class Members to clock out at the end of their scheduled shift but continue working for approximately one extra hour to complete end-of-day work assigned by Defendants for no compensation.

34.     Plaintiff and Class Members did not receive wage statements that were in compliance with the NYLL. Plaintiff and Class Members received inaccurate wage statements that failed to accurately reflect the number of hours worked and their proper compensation. Due to Defendants' illegal policy of time-shaving, Plaintiff's and Class Members' wage statements failed

10

to include the number of regular hours worked, and the number of overtime hours worked, in violation of the NYLL.

35.      Defendants failed to provide Plaintiff and Class Members with wage notices at hiring and at dates of all wage changes thereafter. Plaintiff and Class Members did not receive wage notices either upon being hired or upon wage changes since the date of hiring, in violation of the NYLL.

36.      In violation of the Wage Theft Protection Act ("WTPA")—incorporated into NYLL—Defendants knowingly and willfully operated their business with a policy of not providing wage notices to Plaintiff and Class Members at the beginning of their employment with Defendants.

37.      Defendants further violated the WTPA by failing to provide Plaintiff and Class Members with any wage statements.

38.      In failing to provide any wage statements and notices, Defendants have failed to comply with the law in a manner that entails a concrete harm to an interest identified by the New York State legislature. As one Court observed:

> Here, Plaintiffs allege that Defendants failed to furnish them with proper wage notices and statements, as required by NYLL §§ 195(1) and 195(3). These provisions were enacted as part of New York's Wage Theft Prevention Act ("WTPA"), N.Y. Lab. Law § 195, which sought "to expand the rights of employees to seek civil and criminal avenues of remedy for their employers failing to follow labor law appropriately and the specifications therein." N.Y. Spons. Mem., 2010 S.B. 8380. More specifically, the New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages and how they are calculated in language the employees could understand. *Id.* The New York State Assembly opined that existing penalties did not adequately deter employers from paying less than the wages owed, and stated that the WTPA would dramatically change this by increasing penalties for violating employees' rights. *Id.*

*Imbarrato v. Banta Mgmt. Servs.*, 2020 U.S. Dist. LEXIS 49740, *21-22 (S.D.N.Y. March 20, 2020)

39.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members. Defendants' failure to provide wage notices and paystubs listing all hours actually worked and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the pay provided by Defendants, allowed Defendants to hide their wrong-doings, and necessitated the current litigation to vindicate Plaintiff's and Class Members' rights. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Defendants' failure to provide wage notices and wage statements to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

40.     Had Defendants provided any wage statements to Plaintiff and Class Members which accurately listed the total number of hours Plaintiff and Class Members actually worked and their proper pay rates, as required by law, Defendants would have had to either (a) increase employees' wages to correspond to the hours they actually worked or (b) forthrightly acknowledge, by way of the wage statement, that the employee's wages did *not* correspond to the hours the employees actually worked. Either possibility would have allowed Plaintiff and Class Members to vindicate their rights under the NYLL. The deprivation of these possibilities therefore constitutes an injury.

41.     The failure to provide any wage notices and wage statements continues to result in delayed payment of all proper wages owed to Plaintiff and Class Members. This delayed payment caused Plaintiff and Class Members to struggle to pay bills and other debts.

42.     The direct effect of understating the number of hours an employee worked is to reduce the wages that employees are listed as having earned on their wage statements. The direct effect of this, in turn, is to reduce the employee earnings that the employer later reports to the IRS through the employee's W-2 form, as such information is derived from the information on employees' wage statements. *See Mills v. Mills*, 2021 Minn. Dist. LEXIS 200, *5 (Minn. Dist. Ct., Anoka County, Tenth Judicial District May 20, 2021) ("Petitioner's gross annual income, based on her 2020 W-21 and paystub dated 12/24/20, is $130,321.30"); *T.F. v. N.F.*, 820 N.Y.S.2d 846, 846 (Sup. Ct., Suffolk Cty., June 22, 2006) ("In 2005 the plaintiff earned $ 133,086 as reflected on his final year paystub and W-2").[1]

43.     The effect of reporting reduced wages on an employees' W-2 is, in turn, to reduce the amount of social security benefits available to the employee, as an employee's entitlement to benefits reflects how much money he or she is reported as having contributed to the social security system. *See McGauran v. Soc. Sec. Comm'n*, 2001 U.S. Dist. LEXIS 3187, *7 (N.D. Cal. March 19, 2001) ("Social security benefits are based upon the worker's earnings as reported to the [SSA] . . . [and] the worker's earnings are used to determine insured status for entitlement to retirement and to calculate cash benefit rates." (quoting Social Security Administration, Handbook § 1400 (1997)); *Coward v. Zurich Am. Ins. Co.*, 2011 U.S. Dist. LEXIS 74543, *3 (N.D. Ill. July

---

[1] It is true that the wages reported on W-2 forms are not always precisely identical to those listed on an employees' last paystub for the year. One reason for is, as the IRS explains, that "W-2 wages include: (i) the total amount of wages as defined in section 3401(a); (ii) the total amount of elective deferrals (within the meaning of section 402(g)(3)); (iii) the compensation deferred under section 457; and (iv) the amount of designated Roth contributions (as defined in section 402A)." https://www.irs.gov/pub/irs-drop/rp-19-11.pdf. However, the possibility, that wages listed on a W-2 might be affected by such considerations does not change the fact that the base wages on the W-2 are derived from paystubs. The paystub processing service *realcheckstubs* explains:  "A pay stub contains crucial information that assists in calculating W2 wages. Paystub provides gross wages, deductions, taxes withheld, and other income-related data. Individuals gather the necessary figures required for accurate W2 calculation by referring to the pay stub." https://www.realcheckstubs.com/blog/paystubs/6-steps-how-to-calculate-w-2-wages-from-paystub.

8, 2011) ("Under the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year.'") (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

44.    "In the wake of the Supreme Court's decision in *TransUnion*, courts in this Circuit have held that plaintiffs lack standing to bring wage notice and statement claims under the NYLL absent any concrete, downstream consequences of the recordkeeping violation." *Chen v. Lilis 200 W. 57th Corp.*, 2023 U.S. Dist. LEXIS 38163, *18 (S.D.N.Y. Mar. 7, 2023). "On the other hand, 'allegations' that go 'beyond asserting a bare statutory violation and sufficiently allege concrete harm' resulting from 'the underpayment of wages' pass muster because 'monetary injury is a concrete harm sufficient for purposes of Article III standing.'" *Thompson v. Elev8 Ctr. N.Y.*, LLC, 2023 U.S. Dist. LEXIS 122504, *21 (S.D.N.Y. July 17, 2023) (quoting *Mateer v. Peloton Interactive, Inc.*, 2022 U.S. Dist. LEXIS 125017, *4 (S.D.N.Y. July 14, 2022)).

45.    Here, it is clear that Defendants' failure to provide Plaintiff and Class Members with any wage statements entailed "concrete, downstream consequences" involving monetary injury. Had the number of hours been accurately reported for a given pay period, Defendants' automatic payroll system would have correspondingly increased the wages due for that period, which in turn would have been reflected in the W-2s that Defendants submitted to the IRS on behalf of Plaintiff and Class Members. That, in turn, would have increased Plaintiff's and Class Members' entitlement to social security benefits. Because the inaccuracy prevented this outcome, it constitutes an injury sufficient to provide Plaintiff with Article III standing.

46.    Courts agree that the misreporting of wages constitutes a concrete injury cognizable under Article III:

> The Seventh Circuit in *Calderon* squarely addressed FICA standing. The plaintiffs in *Calderon* were former employees alleging the employer failed to pay their FICA taxes. 999 F.2d at 1105-06. The Seventh Circuit found that the plaintiffs lacked standing to compel the employer to pay their FICA taxes because

"[b]enefits do not. . . depend on whether the employer actually paid the taxes." *Id.* at 1106. Plaintiffs could, however, enforce FICA's reporting requirement because it is the reporting of income that triggers benefits, and losing benefits is an injury under *Lujan*. *Id.* Whether the employer in *Calderon* made FICA payments on the plaintiffs' behalf had no bearing on the plaintiffs' entitlement to benefits. *Id.* "[T]he plaintiff's real interest lies in ensuring that the [employer] make the proper reports of their income." *Id.*

*Coward*, 2011 U.S. Dist. LEXIS 74543, at *3-4.

47.    The case at bar is somewhat different from *Coward* inasmuch as Defendants actually underpaid Plaintiff and other employees rather than merely misreporting their income. But this distinction has no bearing on the question of Article III standing, since it is still the case that "it is the reporting of income that triggers benefits, and losing benefits is an injury." *Id.* Plaintiff and Class Members lost benefits by virtue of how Defendants reported their income, and how Defendants reported employees' income was the direct outcome of the inaccuracies in employees' wage statements. That is why "Plaintiffs have standing to enforce the statutory reporting requirements" imposed by the WTPA. *Calderon v. Witvoet*, 999 F.2d 1101, 1106 (7th Cir. 1993).

48.    Whether or not any Class Members are presently eligible for social security benefits is legally immaterial. *See id.* ("Although only citizens and aliens residing in the United States may receive benefits, 42 U.S.C. § 402(t), plaintiffs may eventually fulfill this requirement and therefore are entitled to keep their Social Security accounts accurate.").

49.    The *Calderon* court stressed that an employee's interest in ensuring that an employer properly report the employee's income is amplified by the difficulty of persuading the government to correct errors:

The practical difficulty is that eligibility for Social Security benefits presumptively depends on reports that employers send to the government. A worker who seeks credit for unreported income bears the burden of proof, 42 U.S.C. § 405(c)(3), (4), which will be hard to carry if the employer has not furnished the customary

documentation. The government believes employers who report earnings, because these reports are costly to make--they entail paying a substantial tax. The government tends not to believe undocumented claims by employees, because these claims are essentially costless yet could establish entitlement to large pensions or disability benefits.

All of this means that the plaintiffs' real interest lies in ensuring that the Witvoets make the proper reports of their income. *Id.*

*Calderon v. Witvoet*, 1993 U.S. App. LEXIS 17890 **

50.    Here, the problem is not merely challenging but insurmountable. Plaintiff and Class Members cannot even attempt to have their earnings report corrected because Defendants *did* report what they actually paid Plaintiff and Class Members. The problem, rather, is that Plaintiff and Class Members were underpaid. Yet the ultimate effect is the same—reduced social security eligibility. Because "[u]nder the Social Security statute, entitlement depends on 'the total of the wages paid . . . to an individual in a calendar year,'" Plaintiff was irreversibly injured with respect to his social security benefits as soon as Defendants sent his W-2 to the IRS. *Coward*, 2011 U.S. Dist. LEXIS 74543, at *3 (N.D. Ill. July 8, 2011) (quoting 42 U.S.C. § 413(a)(2)(A)(ii)).

51.    Defendants knowingly and willfully operated their business with a policy of failing to provide Plaintiff, FLSA Collective Plaintiffs, and Class Members with wage notices and accurate wage statements, in violation of the NYLL.

52.    In failing to provide proper wage statements and notices to Plaintiff and Class members, as required under the Wage Theft Protection Act ("WTPA"), Defendants have generated a concrete harm to an interest identified by the New York State legislature. Defendants' failure to provide these documents frustrates New York's objective of, and Plaintiff's interest in, ensuring that employees receive all wages owed. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting the WTPA's wage notice and wage statement

provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380.

53.     Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

54.     Here, Defendants' failure goes beyond generating a risk of harm to Plaintiff and Class Members. Defendants' conduct actually harmed Plaintiff and Class Members by weakening their ability to contest the sufficiency of Defendants' wage payments to them.

55.     For example, Plaintiff has alleged that he performed significant off-the-clock work for which he was not compensated. This means he has alleged that the number of hours listed on the wage statements he received from Defendants were inaccurate, having understated the number of hours Plaintiff actually worked. Withholding *accurate* wage statements, therefore, allowed Defendants to misrepresent themselves as having paid Plaintiff and other employees all wages due when Defendants had not, in fact, done that.

56.     Had the wage statements accurately represented Plaintiff's actual hours, they would have revealed a clear, unambiguous, and indisputable discrepancy between the number of hours that Plaintiff worked and the number of hours for which he was paid—thus providing Plaintiff with incontrovertible proof of Defendants' FLSA and NYLL violations. Such proof would have permitted Plaintiff and other similarly wronged employees to readily prevail on a motion for summary judgment early in the litigation, without the need to conduct much discovery, since accurate wage statements would have effectively constituted a written admission by Defendants of their wrongdoing.

57.     This legal leverage alone might well have incentivized Defendants to make Plaintiff and other employees whole—in order to avert what would be a hopelessly uphill litigation fight.

58.     Regardless of what Defendants would have done with Plaintiff in possession of such leverage, Plaintiff has described what is a certainty of a harm, not a mere risk, because it is certain that incontrovertible documentary evidence of Defendants' wage violations would have placed Defendants in a far weaker legal position and Plaintiff in a far stronger one. Plaintiff has been concretely injured because Defendants' deceptive representations on Plaintiff's wage statements have prevented this outcome.

59.     Of course, Defendants' WTPA violations could not prevent Plaintiff from bringing the instant action. But there is a substantial difference between prosecuting a lawsuit based on contestable testimony and doing so based on incontestable documentary evidence provided by the defendant itself, which is what Defendants' WTPA violations deprived Plaintiff of.

60.     Defendants may retort that accurate wage statements would not have placed them in a weaker position because the wage statements they did provide were, in fact, accurate. But that is an argument for another day, as the Court must accept Plaintiff's allegations as true at this stage of the litigation.

61.     There is no question that Plaintiff would be in a far better position than he is now had he received compliant wage statements. At worst, Plaintiff would have the means to readily prevail on a summary judgment motion, simply on the basis of documentary evidence generated by Defendants themselves. At best, Plaintiff might have avoided litigation altogether, since the threat thereof might have incentivized Defendants to just make Plaintiff whole.

18

62.     Because either of the foregoing outcomes would have been preferable to the status quo, Plaintiff and Class Members were concretely harmed when Defendants failed to provide them with the accurate wage statements that would have facilitated one of the preferred outcomes. The loss of an opportunity to readily prevail on a summary judgment motion with fairly little expenditure of resources is a concrete injury.

63.     Defendants knowingly and willfully operated their business with a policy of not paying Plaintiff, FLSA Collective Plaintiffs, and Class Members for all their hours worked, including overtime, due to time shaving.

64.     Defendants failed to provide wage notices to employees, at the beginning of employment and annually thereafter, pursuant to the requirements of the NYLL.

65.     Defendants knowingly and willfully operated their business with a policy of not providing employees proper wage statements as required under NYLL.

*Discrimination Claims:*

66.     Plaintiff suffered from Defendants' discriminating against him because of his age and disability. Plaintiff is sixty (60) years old and while employed by Defendants, Plaintiff required several weeks off from work due to a serious medical condition. When Plaintiff returned from his approved medical leave, Defendants began a campaign to get rid of Plaintiff, as a result of his age and perceived disability.

67.     Beginning in 2020, after Plaintiff returned to work following his recovery from a stroke, Defendants' Managers Alan Alexander and Robert Perine began to call Plaintiff slow and dumb and began to express dissatisfaction with Plaintiff's work. Also, the superintendent at the building where Plaintiff worked, Claudio Cotto, was hostile and prejudiced towards Plaintiff for no reason.

68.     Before Plaintiff returned from medical leave, neither of Plaintiff's managers Alan Alexander and Robert Perine, nor the super Claudio Cotto had ever expressed any dissatisfaction with Plaintiff related to the manner in which he worked. Therefore, Plaintiff knew this new discriminatory treatment was related to Plaintiff's age and medical condition.

69.     Plaintiff also knew that the unfair treatment he began to experience after returning was discrimination based on his age and perceived disability because even though his supervisors began treating him differently and expressing dissatisfaction with his work, he was still completing the same amount of work as before he had taken time off.

70.     Upon returning from medical leave, Plaintiff informed his supervisors that his doctors recommended that he take it easy and not over-exert himself at work right away. However, rather than try to work with Plaintiff or provide meaningful accommodations for him to perform his work while recovering, Defendants' Managers just criticized him, saying Plaintiff was "slow" and that they did not like the way he worked.

71.     Plaintiff was eventually fired because Defendants' Managers said he was working "too slow," even though Plaintiff was getting the same amount of work done as before his injury.

72.     Plaintiff retained Lee Litigation Group, PLLC to represent Plaintiff, FLSA Collective Plaintiffs, and the Class in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

73.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

74.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiff and FLSA Collective Plaintiffs are covered individuals within the meaning of FLSA, 29 U.S.C. §§ 206(a) and 207(a).

75.     At all relevant times, Defendants employed Plaintiff and FLSA Collective Plaintiff within the meaning of the FLSA.

76.     At all relevant times, Corporate Defendant had gross annual revenues in excess of $500,000.

77.     At all relevant times, Defendants had a policy and practice of failing to pay all wages, including overtime, for all hours worked to Plaintiff and FLSA Collective Plaintiffs due to time shaving.

78.     Records, if any, concerning the number of hours worked by Plaintiff and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiff and FLSA Collective Plaintiffs should be in the possession and custody of Defendants. Plaintiff intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will seek leave of Court to amend this Complaint to set forth the precise amount due.

79.     Defendants knew of and/or showed a willful disregard for the provisions of FLSA as evidenced by their failure to compensate Plaintiff and FLSA Collective Plaintiffs their proper wages, including for overtime, when Defendants knew or should have known such was due.

80.     Defendants failed to properly disclose or apprise Plaintiff or FLSA Collective Plaintiffs of their rights under the FLSA.

81.     As a direct and proximate result of Defendants' willful disregard of FLSA, Plaintiff and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

82.     Due to the intentional, willful and unlawful acts of Defendants, Plaintiff and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages, including overtime, due to time-shaving; plus an equal amount as liquidated damages.

83.     Plaintiff and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## <u>VIOLATION OF NEW YORK LABOR LAW</u>

84.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

85.     At all relevant times, Plaintiff and Class Members were employed by Defendants within the meaning of NYLL, §§ 2 and 651.

86.     Defendants willfully violated the rights of Plaintiff and Class Members by failing to pay them their proper wages for all hours worked, including overtime, due to time shaving.

87.     Defendants knowingly and willfully operated their business with a policy of not providing Plaintiff and Class Members proper wage notice, at date of hiring and annually thereafter, as required under the NYLL.

88.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required under the NYLL. Defendants are required to provide itemized listings of deductions taken on each wage statement. Defendants failed to satisfy

the requirements under the NYLL because the wage statements did not include all hours Plaintiff and Class Members worked.

89.    Due to Defendants' NYLL violations, Plaintiff and Class Members are entitled to recover from Defendants unpaid wages, including overtime, due to time shaving; reasonable attorneys' fees; liquidated damages; statutory penalties; and costs and disbursements of the action, pursuant to NYLL.

**COUNT III**

**DISCRIMINATION IN VIOLATION OF
NEW YORK STATE HUMAN RIGHTS LAW**

**(New York State Executive Law § 296 *et seq*.)**

90.    Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

91.    The New York State Human Rights Law ("NYSHRL") provides: "It shall be an unlawful discriminatory practice: For an employer … because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment." New York State Executive Law § 296(1)(a).

92.    Plaintiff is an employee and a qualified person within the meaning of the NYSHRL and Defendants are covered employees under the NYSHRL. Plaintiff was discriminated against because he was 60 years old and perceived to have a disability.

93.    Defendants operated a business that discriminated against Plaintiff in violation of the NYSHRL because they allowed Managers Alan Alexander and Robert Perine to berate and

criticize Plaintiff because of his age and perceived disability. Defendants ultimately fired Plaintiff because of his age and perceived disability.

94.     As a result of Defendants' unlawful discriminatory practices, Plaintiff sustained injury including economic damages, and past and future physical and emotional distress.

95.     Due to Defendants' violations under the NYSHRL, Plaintiff is entitled to recover from Defendants: (1) back wages, (2) compensatory and punitive damages, and (3) attorneys' fees and cost.

**COUNT IV**

**DISCRIMINATION IN VIOLATION OF
NEW YORK CITY HUMAN RIGHTS LAW**

96.     Plaintiff realleges and incorporates all the above allegations as if fully set forth herein.

97.     The New York City Human Rights Law ("NYCHRL") prohibits discrimination in the terms, conditions, and privileges of employment on the basis of age, providing that:

> "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

The New York City Administrative Code § 8-107(1).

98.     At all relevant times, Defendants had at least four persons in their employ. Plaintiff was an employee and qualified person within the meaning of the NYCHRL and Defendants are covered employers under the NYCHRL.

99.     Under the NYCHRL, an employer is liable for discriminatory conduct by an employee, agent or independent contractor. The NYCHRL provides in relevant part:

(a) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of any provision of this section other than subdivisions one and two of this section.

(b) An employer shall be liable for an unlawful discriminatory practice based upon the conduct of an employee or agent which is in violation of subdivision one or two of this section only where:

    (1) the employee or agent exercised managerial or supervisory responsibility; or

    (2) the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action; an employer shall be deemed to have knowledge of an employee's or agent's discriminatory conduct where that conduct was known by another employee or agent who exercised managerial or supervisory responsibility; or

    (3) the employer should have known of the employee's or agent's discriminatory conduct and failed to exercise reasonable diligence to prevent such discriminatory conduct.

Administrative Code § 8-107(13).

100.    Defendants operated a business that discriminated against Plaintiff in violation of the NYSHRL because they allowed Managers Alan Alexander and Robert Perine to berate and criticize Plaintiff because of his age and perceived disability. Defendants ultimately fired Plaintiff because of his age and perceived disability.

101.    Defendants' conduct was willful or undertaken with reckless disregard of Plaintiff's protected rights under the NYCHRL.

102.    As a direct and proximate result of Defendants' unlawful acts in violation of the NYCHRL, Plaintiff has suffered economic harm as well as severe mental anguish and emotional distress, for which he is entitled to an award of monetary damages and relief, including (1) back wages, (2) compensatory and punitive damages, and (3) attorneys' fees.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of himself, FLSA Collective Plaintiffs, and Class Members, respectfully requests that this Court grant the following relief:

a. A declaratory judgment that the practices complained of herein are unlawful under the FLSA, NYLL, NYSHRL, and NYCHRL;

b. An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c. An award of unpaid wages, including overtime, due to Defendants' time shaving policy due under the FLSA and NYLL;

d. An award of unpaid wages, including overtime compensation at the proper rate of one-and-one-half times the regular rate of pay for hours worked in excess of forty per workweek, due under the FLSA and NYLL;

e. An award of statutory penalties as a result of Defendants' failure to comply with NYLL wage notice and wage statement requirements;

f. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to proper wages pursuant to 29 U.S.C. § 216;

g. An award of liquidated and/or punitive damages as a result of Defendants' willful failure to pay proper wages pursuant to the NYLL;

h. An award of compensatory damages for Plaintiff MOLINA's emotional suffering as a result of Defendants' unlawful discriminatory practices, pursuant to the NYSHRL and NYCHRL;

i. An award of punitive damages for Defendants' unlawful discriminatory practices, pursuant to the NYSHRL, and NYCHRL;

j. An award of prejudgment and post judgment interest and costs and expenses of this action together with reasonable attorneys' and expert fees;

k. Designation of Plaintiff as Representative of the FLSA Collective Plaintiffs;

l. Designation of this action as a class action pursuant to F.R.C.P. 23;

m. Designation of Plaintiff as Representative of the Class; and

n. Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all issues so triable as of right by jury.

Dated: September 9, 2024                    Respectfully submitted,

                                          **LEE LITIGATION GROUP, PLLC**

                          By:     _/s/ C.K. Lee_
                                         C.K. Lee (CL 4086)
                                         Anne Seelig (AS 3976)
                                         148 West 24th Street, 8th Floor
                                         New York, NY 10011
                                         Tel.: (212) 465-1188
                                         Fax: (212) 465-1181
                                         _Attorneys for Plaintiff,_
                                         _FLSA Collective Plaintiffs, and the Class_